UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARI HOFFMAN et al.,<br><br>Plaintiff,<br>v.<br><br>WASHINGTON STATE HOUSE OF REPRESENTATIVES et al.,<br><br>Defendants. | CASE NO. 3:26-cv-05214-DGE<br><br>ORDER DENYING STATE DEFENDANTS' MOTION TO COMPEL DISCOVERY UNDER RULE 37 (DKT. NO. 60) |

Defendants the Washington State House of Representatives, Chief Clerk Bernard Dean, and the State of Washington ("State Defendants") filed a motion to compel Plaintiffs Ari Hoffman, Brandi Kruse, and Jonathan Choe ("Plaintiffs") to produce discovery responsive to State Defendants' First Set of Interrogatories and Requests for Production. (Dkt. No. 60.) For the reasons that follow, State Defendants' Motion to Compel Discovery Under Rule 37 (Dkt. No. 60) is DENIED.

## I FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit after receiving denials for each of their applications for Washington State House of Representatives ("House") press passes in late January and early February of 2026, claiming these denials violated their constitutional rights. (Dkt. No. 37 at 15–20.)

In seeking House press passes, Plaintiffs completed an online application on the House website. (*Id.* at 10.) The online application required the applicant's name, phone number, email, organization, and the organization's address. (*See* Dkt. Nos. 63-1 at 11; 63-2 at 10–13, 34; 63-5; 63-6; 63-7.) The application process did not include requests for financial information, emails with legislators, or private text messages. (Dkt. Nos. 63-1 at 12–13, 15, 23–25.; 63-2 at 14–16, 32, 34.) Neither did the appeals process which each of the Plaintiffs unsuccessfully pursued. (Dkt. No. 63-1 at 20–24, 29–30.)

On June 12, 2026, State Defendants served their first set of discovery requests. (Dkt. Nos. 60 at 4; 61 at 2.) While Plaintiffs produced some responsive discovery, Plaintiffs objected to producing private text messages and emails, asserting discovery requests for this information lacked relevance because State Defendants seek information "unknown to Defendants when they denied [Plaintiffs' press-pass application[s]." (*See, e.g.*, Dkt. No. 61 at 11.) Plaintiffs also asserted these various requests violated their First Amendment associational privilege, attorney-client privilege, and Washington's Reporter's Shield Law (Wash. Rev. C. § 5.68.010), among other arguments. (*See, e.g.*, *id.* at 12.)

The Parties submitted a joint discovery statement to the Court regarding their discovery dispute on September 28, 2026. (Dkt. No. 51.) Following a discovery hearing this Court held on October 6, 2026, the Court (1) ordered Plaintiffs to submit an amended privilege log and to meet

and confer with State Defendants regarding these updates and (2) set a briefing schedule for this pending motion. (Dkt. No. 54.)

Plaintiffs then supplemented their production by producing 221 redacted records and submitting an updated privilege log to State Defendants first on October 19, 2026, and then on October 22, 2026. (Dkt. No. 61 at 3.) However, State Defendants assert "Plaintiffs continue to withhold more than 400 pages (or portions of pages), most of which are not even allegedly privileged." (Dkt. No. 60 at 6) (*see also* Dkt. No. 61 at 59–68). Plaintiffs believe in addition to their asserted privileges, all the withheld records are irrelevant to the claims and defenses at issue. (Dkt. No. 62 at 6–10) (*see also* Dkt. No. 61 at 76).

The Parties state they have met and conferred regarding these outstanding discovery disputes. (Dkt. No. 61 at 3, 6.)

State Defendants filed this pending motion on November 3, 2026. (Dkt. No. 60.) Plaintiffs filed a response on November 10, 2026, requesting oral argument. (Dkt. No. 62.) State Defendants filed a reply on November 16, 2026. (Dkt. No. 66.) Plaintiffs then filed a notice they intended to file a surreply to strike material in a reply brief under Local Civil Rule 7(g) on November 17, 2026. (Dkt. No. 68.) As of the date of this order, Plaintiffs have not filed a surreply, and the Court does not find it necessary to review Plaintiffs' arguments to issue the following order as the Court does not rely on evidence put forth in State Defendants' reply brief.

## II DISCUSSION

### A. Legal Standard

If a party refuses to respond to discovery, the requesting party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party moving to compel first bears the burden of establishing the requests are relevant. *See Doe v. Trump*, 329 F.R.D. 262,

270 (W.D. Wash. 2018). Then, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Comput. Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997). The trial court has "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (quoting *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996.)

**B. The Discovery Requested Lacks Relevance Under Fed. R. Civ. P. 26(b)(1)**

Discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" is permitted regardless of whether the information is ultimately admissible. Fed. R. Civ. P. 26(b)(1). "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' " *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). Federal Rule of Civil Procedure 26(b)(1) identifies six factors to be considered when determining if the proportionality requirement has been met: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Local rules also emphasize the "proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in every case." LCR 26(f).

State Defendants assert three different arguments as to why the discovery they seek is relevant.

First, State Defendants assert the communications are necessary to defend from Plaintiff's constitutional claims. (Dkt. No. 60 at 7–8.) State Defendants state evidence unknown to them at the time of the alleged wrongdoing is relevant as they "are entitled to discover the 'underlying fact[s] tend[ing] to make it more likely that' [Plaintiffs] were (and knew they were) engaging in disqualifying advocacy work when they applied for press passes in 2026." (*Id.* at 8) (quoting *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1079 (9th Cir. 2019)).

In *Crawford*, the Ninth Circuit held the district court abused its discretion in determining evidence regarding a police shooting victim's mental health history prior to the shooting was irrelevant because:

> Evidence that [the victim] had *previously* behaved in ways consistent with mental illness and had been taken to mental health providers for treatment, makes it more likely that he *continued* to suffer from mental illness on the day of the shooting. In turn, whether [the victim] was *in fact* mentally ill that day is relevant to whether he would have *appeared* to be mentally ill, and thus to whether [the officer] knew or should have known that [the victim] was mentally ill; after all, the existence of some underlying fact tends to make it more likely that a person knew or should have known that fact.

*Crawford*, 944 F.3d at 1078–1079 (emphasis in original). State Defendants argue that in parallel to this series of inferences in *Crawford*, Plaintiffs' private communications are relevant as to whether Plaintiffs appeared, from State Defendants' point of view, to be engaging in disqualifying advocacy work when they applied for press passes in 2026. (Dkt. No. 60 at 8.)

This analogy is a stretch such that the Court finds *Crawford*'s conclusion inapplicable here. In *Crawford*, what an officer perceived about a person's outward mental health appearances was in dispute in the litigation, making information about the victim's mental health history relevant to assessing the reasonableness of the force used in assessing a Fourth Amendment excessive force claim. *See Crawford*, 944 F.3d at 1077 (quoting *Vos v. City of Newport Beach*, 892 F.3d 1024, 1031 (9th Cir. 2018) (in a Fourth amendment excessive force

claim, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (citation modified).

Here, State Defendants had a fixed set of information they both defined and chose to rely on to deny Plaintiffs' 2026 press passes. The application for a press pass involved the applicant's name, email address, telephone number, and organization represented. (*See, e.g.*, Dkt. No. 63-1 at 11.) This information did not include Plaintiffs' private communications, and in his deposition, Defendant Bernard Dean stated this category of communications is not part of the application process because "we're not in the habit of auditing the conversations that individuals have with our members." (*Id.* at 13.) Though the Court finds *Crawford*'s Fourth Amendment context inapplicable here, effectively the parties knew what was "on the scene" at the time they denied Defendants' press passes. Were the Court to grant State Defendants' motion to compel, they would inappropriately seek to justify a past decision based on information they chose never to seek.

Setting *Crawford* aside because the Court finds its Fourth Amendment excessive force context inapplicable, the Court must consider what is proportional to the needs of *this* case. *See* Fed. R. Civ. P. 26(b)(1). Because State Defendants' knowledge when they denied the press passes was based on the fixed universe of Plaintiffs' applications and any publicly available information, Plaintiffs' private communications State Defendants seek is disproportionate to the needs of this case.

State Defendants' second and third arguments regarding the relevance of the disputed discovery fare no better. State Defendants' second argument is the communications they seek are relevant to Plaintiffs' anticipated request for preliminary injunctive relief in advance of the

2027 legislative session. (Dkt. No. 60 at 3, 8.) At present, this action is limited to Plaintiff's press denials for the 2026 legislative session.[1] Thus, the Court finds the disputed discovery is not relevant to claims that are currently before the Court.

Third, State Defendants argue the private communications are necessary to evaluate Plaintiffs' credibility as witnesses. (Dkt. No. 60 at 3, 9.) State Defendants focus on Plaintiffs attestation in their amended litigation that they "do not engage in campaigns, lobbying, or in the development of public policy," as well as other similar statements made since this litigation started. (*See* Dkt. No. 66 at 1) (quoting Dkt. No. 37 at 15, 17, 19.) While the Court agrees with State Defendants that the credibility of witnesses can be relevant, especially when weighing the testimony and statements of those whose personal knowledge and perception are at issue before the trial court (*see* Dkt. No. 66 at 1–2), here, Plaintiff's statements post-press pass denial, and the credibility of those statements, are irrelevant to what State Defendants knew or could have known at the time of the February 2026 press pass denials and also irrelevant to the Court's ultimate assessment of whether the information the State Defendants used was sufficient to support the State Defendants' decision.

---

[1] In Plaintiffs' amended complaint, Plaintiffs seek the relief of "a judgment declaring that the press passes were improperly denied to Plaintiffs and ordering Defendants to only deny them future press passes if accompanied by a fulsome explanation of the non-arbitrary grounds for denial." (Dkt. No. 37 at 36.) Though the Court is unclear what the boundaries of a "fulsome explanation of the non-arbitrary grounds for denial" may look like, the amended complaint does not ask the Court to order Defendants to grant press passes for the upcoming legislative session.

Additionally, although Plaintiffs have indicated they "each intend to apply for House floor press pass credentials for the 2027 session and every session thereafter," (Dkt. No. 37 at 8) and now assert they "ask for an injunction tailored to the 2027 session and to the proven defects in State Defendants' process" in their Motion for Summary Judgment (Dkt. No. 65 at 26), no such request is currently made before the Court based on the operative complaint (Dkt. No. 37).

If in fact Plaintiffs amended complaint can be interpreted to include a request to order Defendants to issue prospective press passes, then the Court likely would have a different opinion as to the relevance of some of the information Defendants now seek.

Because the Court holds the disputed discovery is irrelevant under Federal Rule of Civil Procedure 26(b)(1), the Court need not reach the parties' remaining arguments, including those regarding First Amendment privilege, attorney-client privilege, and Washington's Reporter's Shield Law at this time.

## III CONCLUSION

Accordingly, and having considered State Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that State Defendants' Motion to Compel Discovery Under Rule 37 (Dkt. No. 60) is DENIED. Plaintiff's request for oral argument, as well as any forthcoming motion to strike (Dkt. No. 68), are DENIED as moot.

Dated this 23rd day of November, 2026.

David G. Estudillo
United States District Judge